UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PATRICK R. DYCUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CV-78 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Patrick R. Dycus ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 8, 2010, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began on September 1, 2009. [Tr. 133-41]. After his application was initially denied and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 84]. On November 14, 2011, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 26-

1

49]. On December 1, 2011, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: ischemic heart disease; status-post PTCA post stint placement; chronic obstructive pulmonary disease; back pain; an anxiety disorder and a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *light work* as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. He can sit, stand, and walk for two hours at a time without interruption. He can sit, stand and walk for a total of six hours each in an eight-hour workday. He can do occasional climbing of stairs and ramps, but no climbing of ladders or scaffolds. He can do no balancing or crawling. He can do occasional stooping, kneeling and crouching. He must avoid all exposure to humidity and wetness, dust, odors, fumes, pulmonary

irritants and temperature extremes. He is able to do simple and multi-step tasks. He is able to maintain attention and concentration for periods of at least two hours. He has occasional interruptions from psychologically based symptoms but overall he is able to sustain work. He is able to interact appropriately with coworkers, supervisors and the general public. He is able to adapt to routine workplace changes as needed.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 13, 1957 and was 52 years, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12-19].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is

3

eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

5

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.  **EVIDENCE**

The Plaintiff was fifty-two years old on his alleged onset date and was fifty-four years old at the time of the ALJ's decision. He has a GED and has previously worked as a cabinet installer, tractor trailer driver, delivery driver, machine tender packer, tree trimmer, and cable television installer. [Tr. 166].

*A.  Medical Evidence*

On March 4, 2002, the Plaintiff was admitted to the hospital after complaining of severe chest pains. [Tr. 272]. Max Lawson, M.D., diagnosed the Plaintiff with an inferior myocardial infection, and the Plaintiff underwent an angioplasty and stent replacement to the right coronary artery. [Id.]. The Plaintiff was instructed on a low-fat, low-cholesterol diet, tobacco cessation, post-myocardial infarction activity, post-stenting activity, and Nitroglycerin use. [Tr. 453]. Dr. Lawson prescribed Metroprolol, aspirin, Zocor, and Plavix, and he told the Plaintiff to continue using his Albuterol inhaler. [Id.].

The Plaintiff continued to see Dr. Lawson for follow-up visits. [Tr. 252-74]. During these visits, Dr. Lawson diagnosed the Plaintiff with coronary artery disease, COPD, and a normal ejection fraction with inferior hypokinesis. [Tr. 256]. The Plaintiff was unable to continue the Zocor because he could not afford to pay for a prescription. [Tr. 258]. Dr. Lawson gave the Plaintiff samples of Provachol for one month. [Tr. 257]. On every follow-up visit, Dr. Lawson told the Plaintiff that he needed to stop smoking; however, the Plaintiff failed to follow

7

these instructions. [Tr. 256-72]. The Plaintiff complied somewhat with his diet modifications but failed to fast in order to take a liver and lipid panel. [Tr. 260].

On February 24, 2011, the Plaintiff saw William Kenney, Ph.D., for a mental status exam. [Tr. 288]. Dr. Kenney noted that the Plaintiff's memory was fair and he was oriented. [Tr. 289]. The only past mental health treatment was from a hospital in Oak Ridge, Tennessee, which occurred a few years ago. [Tr. 288.]. The Plaintiff told Dr. Kenney that he has "some anxiety where he gets shaky, nervous, his chest gets tight, [and he has] trouble breathing." [Tr. 290]. The Plaintiff reported that "he feels worthless" and has "teary spells once a week." [Id.]. He denied having any suicidal plans because suicide is against his religion. [Id.]. Dr. Kenney noted that his diagnostic impressions were major depression and an anxiety disorder. [Id.].

George T. Davis, Ph.D., completed a residual functional capacity ("RFC") assessment without examining the Plaintiff. [Tr. 307]. Dr. Davis reported that the Plaintiff was able to perform "simple and multistep tasks." [Id.]. He noted that the Plaintiff "has the ability to interact appropriately with coworkers, supervisors, and the general public" and he "can adapt to routine workplace changes as needed." [Id.]. Finally, Dr. Davis reported that the Plaintiff "will have occasional interruptions from psychologically based symptoms" but was able to "maintain attention and concentration for periods of at least two hours." [Id.]. Dr. Davis found that the Plaintiff was able to "sustain work." [Id.].

On March 9, 2011, Jeffrey Summers, M.D., performed a consultative examination of the Plaintiff. Dr. Summers noted that the Plaintiff complained of tightness in his chest, dyspnea, and back pain. [Tr. 317]. The Plaintiff told Dr. Summers that he experiences dyspnea when he is exposed to dusty conditions, temperature extremes, and high humidity. [Id.]. Dr. Summers noted that the Plaintiff "has a long-standing history of tobacco abuse having smoked ½-2 packs of

8

cigarettes each day for 44 years." [Id.]. The Plaintiff told Dr. Summers that he injured his back in the 1990s while at work. [Id.]. He underwent a discectomy and fusion procedure of his lumbar spine. [Id.]. Despite these efforts, the Plaintiff told Dr. Summers that he still experiences back pain. [Id.]. The Plaintiff stated that "he had difficulty sitting, standing, or walking for greater than 2 hours continuously or 6 hours in a single workday." [Id]. Dr. Summers noted that the Plaintiff was "able to stand and walk on both heels and toes, perform a full squat, and stand on either leg singly." [Tr. 319]. In addition, Dr. Summers noted that the Plaintiff "has a decrease in range of motion at his lumbar spine" and had a normal gait. [Id.]. He concluded:

> [The Plaintiff] will have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 lbs as well as sitting, standing, or walking for greater than 2 hours continuously *or 6 hours total in a single workday.* He does appear capable of sedentary and low level exertional activities in stable working environments including operating hand/foot controls, performing clerical work, security work, etc[.] for 8 hours total in a single workday.

[Id.] (emphasis added).

On April 8, 2011, Dr. Summers saw Plaintiff again. The Plaintiff completed a pulmonary function test. [Tr. 329]. The pulmonary function test showed moderate airway obstruction and low vital capacity, but Dr. Summers noted that the Plaintiff had "poor effort." [Tr. 333]. Dr. Summers also observed that the Plaintiff had an "abnormal gait." [Tr. 330]. The Plaintiff told Dr. Summers that he had "difficulty sitting, standing, or walking for greater than 2 [hours] continuously or 4 [hours] total in a single workday." [Id.]. Dr. Summers concluded:

> Based on these findings, it is reasonable to expect that [the Plaintiff] will have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 lbs., as well as sitting, standing or walking for greater than 2 hrs. continuously *or 4 hrs. total in a single workday.*

[Id.] (emphasis added).

9

*B.*     *Other Evidence*

Independent vocational expert, Katharine Reynolds-Bradford, testified at the hearing on this matter. She testified that the Plaintiff had past experience as a tractor trailer truck driver, which is medium and semiskilled work, a delivery driver, which is medium and semiskilled work, a machine tender packer, which is medium and unskilled work, and a cable television installer, which is heavy and skilled. [Tr. 42-43]. Ms. Reynolds-Bradford testified that the Plaintiff would not be able to return to his previous work, but he could perform work at the light exertional level. [Tr. 44]. Specifically, the Plaintiff could perform work as an assembler and an inspector, both of which are positions available in the regional and national economies. [Id.]. While using Dr. Summers's March examination of the Plaintiff, Ms. Reynolds-Bradford testified that those jobs would still be available, but "the numbers would be reduced by 20 to 25 percent due to the additional limitations." [Tr. 44-45]. On questioning by the Plaintiff's counsel, Ms. Reynolds-Bradford testified that, if Plaintiff could only do four hours of any combination of sitting, standing, or walking, it would "preclude all competitive full-time employment." [Tr. 47].

**V.     POSITION OF THE PARTIES**

The Plaintiff alleges that the ALJ improperly considered the medical opinions in the record. [Doc. 14 at 1]. First, the Plaintiff argues that the ALJ improperly excluded portions of Dr. Summers's April assessment when determining the Plaintiff's RFC. [Id. at 5]. The Plaintiff alleges that Dr. Summers's April assessment concluded that the Plaintiff could not perform full-time work. [Id.]. Second, the Plaintiff argues that the ALJ improperly granted greater weight to a non-examining source than an examining source. [Id. at 6].

10

The Commissioner responds that the ALJ properly considered the medical opinions of record. [Doc. 16 at 3]. First, the Commissioner argues that Dr. Summers's March and April assessments are the same and that Dr. Summers's April assessment did not opine that the Plaintiff could only work for four hours a day. [Id. at 4-5]. Second, the Commissioner concedes that the ALJ did not explicitly weigh Dr. Summers's April assessment but argues that it was harmless error. [Id. at 5]. Finally, the Commissioner argues that the ALJ properly gave Dr. Kenney's opinion little weight. [Id. at 7]. The Commissioner maintains that the ALJ's decision is supported by substantial evidence. [Id. at 3].

## VI. ANALYSIS

The Plaintiff presents two allegations of error. The Court will address each allegation in turn.

### A. Weight Afforded to Dr. Summers's April Assessment

The Plaintiff argues that while the ALJ gave Dr. Summers's March assessment "significant weight," the ALJ failed to discuss why Dr. Summers's April assessment should be excluded from the Plaintiff's RFC. [Doc. 14 at 5]. The Plaintiff argues that Dr. Summers's April assessment "best comports with part-time work," which "directs a finding of disability." [Id.].

The Commissioner responds that in Dr. Summers's April assessment, Dr. Summers did not opine "that Plaintiff could only work for 4 hours total in a single day." [Doc. 16 at 5]. Instead, the Commissioner argues, Dr. Summers opined that the Plaintiff "could sit for 4 hours total, stand for four hours total, and walk for four hours total." [Id.]. The Commissioner concedes that the ALJ did not explicitly weigh the April assessment, but the Commissioner argues that any error in this regard is harmless. [Id.]. First, the Commissioner argues that the

11

"[vocational expert] testified that an individual who could sit, stand and walk for 2 hours continuously and for four hours each in a single day could perform light work with a sit/stand option." [Id.]. The Commissioner contends that this "RFC would not preclude employment." [Id.]. Second, the Commissioner argues that the "main difference between the March and April findings was that in April 2011, Plaintiff's gait was shuffled, whereas it was normal in March." [Id.]. The Commissioner asserts that the April assessment was not supported by Dr. Summers's own findings, and therefore, "it was not entitled to any significant weight." [Id.]. Finally, the Commissioner contends that the Plaintiff's daily activities support the ALJ's RFC finding because "Plaintiff's limitations in caring for himself are due to his lack of finances and housing, not his impairments." [Id. at 6].

The ALJ is obligated to "evaluate every medical opinion . . . receive[d]." 20 C.F.R. § 404.1527(c). Nonetheless, the ALJ determines the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). In evaluating disability, the ALJ is to "review all of the medical findings and other evidence that support a medical source's statement that [the plaintiff] is disabled." 20 C.F.R. § 404.1527(d)(2). It is well-established, however, that an ALJ is not required to discuss all of the relevant evidence in the record, nor is he required to comment on every finding in a medical opinion. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). The ALJ also determines the RFC but must "use medical sources, including [a] treating source, to provide evidence, including opinions, on the nature and severity of [the plaintiff's] impairments." 20 C.F.R. § 404.1527(d)(2).

It is clear that the ALJ did not ignore Dr. Summers's April assessment; he instead gave Dr. Summers's March assessment "significant weight." [Tr.17]. Here, the Plaintiff has not cited any legal authority indicating that the ALJ was required to explicitly explain why he credited the March assessment more than the April assessment. It is clear, however, that the ALJ considered the Plaintiff's April examination, but the ALJ chose to credit the March exam based on the Plaintiff's own testimony. [Tr. 16]. Further, in March, the Plaintiff told Dr. Summers he was able to work six hours. [Tr. 317]. In April, the Plaintiff told Dr. Summers he could only work four hours. Dr. Summers adopted the Plaintiff's report. [Tr. 330]. The ALJ noted, however, that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." [Tr. 15].

The only differences in the reports that would lead Dr. Summers to reduce the total hours in a single workday from six to four are the Plaintiff's abnormal gait in April and the Plaintiff's own reports. Dr. Summers failed to explain the two-hour reduction. The ALJ took note of the Plaintiff's abnormal gait. [Id.]. The abnormal gait and Plaintiff's reports do not support Dr. Summers's two-hour reduction and are inconsistent with the Plaintiff's own testimony.

For example, the Plaintiff actually increased his range of motion in the lumbar spine from March to April.[1] The ALJ noted that the Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [Tr. 16]. Further, the Plaintiff testified "he would be able to work as a driver if there was no heavy lifting involved." [Tr. 17]. The ALJ reasoned, "This statement is obviously inconsistent with any subjective complaints of completely disabling symptoms found elsewhere in the record. Such inconsistences on such a crucial subject such as ability to perform work seriously erode the

---

[1] In March, flexion at the waist was 50 degrees, extension at the waist was 10 degrees, and lateral flexion at the waist was 15 degrees left and 15 degrees right. [Tr. 319]. In April, flexion at the waist was 60 degrees, extension at the waist was 15 degrees, and lateral flexion at the waist was 20 degrees left and 20 degrees right. [Tr. 330].

13

reliability of the [Plaintiff's] overall credibility." [Id.]. Further, the ALJ noted that the Plaintiff was able to continue work after the on-set disability, and the Plaintiff testified that he "only had to stop [working as a cabinet installer] because of the medium-to-heavy lifting." [Id.]. Because the Plaintiff's own testimony is consistent with the March assessment, it was not error for the ALJ to give "significant weight" to the March assessment and not the April assessment.

In addition, "[t]he regulations permit the Commissioner to reject a changed medical opinion when the underlying medical results do not substantiate that change in opinion." Boucher v. Apfel, 2000 WL 1769520, at *8 (6th Cir. Nov. 15, 2000); see also Stanely v. Sec'y of Health & Human Servs., 39 F.3d 115, 118 (6th Cir. 1994). As noted above, the only differences in the assessment are the abnormal gait and the Plaintiff's own reports. The Plaintiff's range in motion in the lumbar spine had actually increased from March to April. [Tr. 319, 330]. There is no evidence that the abnormal gait would support the two hour reduction. Furthermore, the ALJ found that the Plaintiff was not credible. [Tr. 17].

While it may have been best practice for the ALJ to explicitly state reasons why he excluded portions of the April assessment in evaluating the RFC, the failure to do so was harmless. First, the ALJ did not omit a mandatory procedure. Boseley, 397 F. App'x at 199. Second, the ALJ discussed the April assessment in his opinion. Third, in the April assessment, Dr. Summers failed to explain why a reduction in total hours was appropriate. Finally, there is substantial evidence to support the March assessment. Therefore, the ALJ's exclusion of the two-hour reduction found in the April assessment was harmless.

**B.     Weight Afforded to the Consultative Examiner in Favor of a Non-Examining Source**

The Plaintiff argues that the "ALJ erred by granting greater weight to a non-examining source than a valid psychiatrist who actually examined the plaintiff." [Doc. 14 at 6]. The Plaintiff

14

submits that the ALJ gave Dr. Kenney's assessment little weight and adopted Dr. Davis's assessment because the Plaintiff did not have a mental health history. [Id.]. The Plaintiff argues, however, that the he was unable to pay for any medical treatment or obtain transportation for treatment. [Id.]. In addition, the Plaintiff argues that the ALJ granted Dr. Davis greater weight because the ALJ believed that Dr. Davis's assessment was more specific and Dr. Kenney lacked experience in the field of disability. [Id.].

The Commissioner responds that the ALJ properly gave Dr. Kenney's opinion little weight. [Doc. 16 at 7]. The Commissioner argues that the Plaintiff has no mental health history and Dr. Kenney's assessment lacked specificity. [Id.]. Further, the Commissioner argues that Dr. Kenney's assessment is based upon "subjective complaints" and contains "few findings that would support the severity of his opinion." [Id.].

Under the Social Security Act and its implementing regulations, an examining source is generally given more weight than someone who has not examined a plaintiff. 20 C.F.R. § 404.1527(c)(1); see Korneck v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). The weight given to non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(c)(3). In addition, a non-examining source will be "evaluate[d by] the degree to which these opinions consider all of the pertinent evidence" in a plaintiff's claim, "including opinions of . . . other examining sources." 20 C.F.R. § 404.1527(c)(3).

The appropriate weight to be given to non-examining and examining sources is determined upon the following factors: supportability,[2] consistency with the record as a whole,

---

[2] Supportability is described as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that is given to the opinion. 20 C.F.R. § 404.1527(c)(3). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." Id.

15

whether the opinion is from a specialist, and other factors which support or contradict an opinion. 20 C.F.R §§ 404.1527(c)(3)-(6). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ explained, in detail, his decision to afford little weight to Dr. Kenney's findings. First, the ALJ considered supportability and found that the Plaintiff had no mental health history. [Tr. 18]. In fact, the ALJ reasoned that the Plaintiff's "mental health impairments stem solely from [the] consultative psychological examination." [Id.]. Although the Plaintiff reported paranoia, the ALJ noted that the Plaintiff was able to attend charity meals and had some friends. [Tr. 13]. The Plaintiff had not experienced any episodes of decompensation, and he could take care of himself. [Id.]. Moreover, the ALJ found that the Plaintiff's impairments were not consistent with the record as a whole and, specifically, the Plaintiff's daily activities. [Tr. 18]. In addition, the ALJ noted that Dr. Davis's assessment is entitled to more weight because he is an "expert in the field of disability." [Id.].

Dr. Davis concluded:

> [The Plaintiff] is able to maintain attention and concentration for periods of at least two hours. He has occasional interruptions from psychologically based symptoms but overall he is able to sustain work. He is able to interact appropriately with coworkers, supervisors, and the general public. He is able to adapt to routine workplace changes as need. . . . [He] performs a wide range of daily activities such as grooming, hygiene, preparing simple food, laundry shopping and money managing.

[Id.]. The ALJ noted that Dr. Davis's conclusion "is more *specific* and *related* to work-related mental activities" than Dr. Kenney's conclusion. [Id.] (emphasis in original). The Court finds that the ALJ's conclusion to afford Dr. Kenney's assessment little weight is supported by substantial evidence.

The Court finds that the ALJ properly weighed the applicable statutory factors to

16

determine the findings from Dr. Kenney were entitled to little weight. 20 C.F.R. §§ 404.1527(c)(1)-(6). Further, the Court finds that the ALJ explained the basis for affording little weight to Dr. Kenney's opinion and gave good reasons for his decision.

Accordingly, the undersigned finds that the Plaintiff's allegation that the ALJ erred by not affording appropriate weight to Dr. Kenney's findings is not well-taken.

VII. **CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 15**] be **GRANTED**.

> Respectfully submitted,
>
>     s/ H. Bruce Guyton
> United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).